UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VIRGINIA M. ADAMS                           CIVIL ACTION

VERSUS                                      NO: 20-3030

COLUMBIA/HCA OF NEW                         SECTION: "J"(1)
ORLEANS, INC. D/B/A LAKEVIEW
REGIONAL MEDICAL CENTER, A
CAMPUS OF TULANE MEDICAL
CENTER

## ORDER & REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 61)** filed by Defendant, Columbia/HCA of New Orleans, Inc. d/b/a Lakeview Regional Medical Center, A Campus of Tulane Medical Center ("Defendant" or "Lakeview"). Plaintiff, Virginia Adams, opposes the motion (Rec. Doc. 81), and Defendant filed a reply (Rec. Doc. 88). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be granted.

## FACTS AND PROCEDURAL HISTORY

This is an employment discrimination case in which Adams alleges that she was wrongfully terminated on August 9, 2019, for taking prescribed medication to treat symptoms of her disability. On July 25, 2019, Adams took 100 milligrams of Benadryl when she woke and then, every four hours, she took 50 mg of Benadryl. Adams went to work at approximately 11:45a.m. that day. By the time she clocked in, she had taken 150 mg of Benadryl. She took an additional 100 mg–150 mg during

1

work, putting her at approximately 250 mg–300 mg. Around 4:30p.m., Adams's supervisor asked her to work in the Blood Bank, and Adams replied that she was lacking focus and did not "feel comfortable going into the Blood Bank." Adams was sent home for the day. Following the events of July 25, Lakeview conducted an investigation and concluded that Adams had violated the Substance Use in the Workplace Policy because "the policy imposes a duty on Lakeview's employees to report to her supervisor whenever she is taking an over-the-counter drug that may impair her job performance." Lakeview then terminated Adams based upon the Policy violation (which Adams disputes), coupled with the fact that she had already been issued two Final Written Warnings for conduct/behavior and performance/ patient safety.

On September 29, 2019, Adams filed a Charge of Discrimination with the EEOC alleging that Lakeview wrongfully discriminated against her due to her disability in violation of the ADA. The EEOC investigated her claims and issued a "no cause" determination, dismissal, and notice of right to sue on August 10, 2020. On November 7, 2020, Adams filed suit in this Court, alleging that Lakeview (1) discriminated against her due to her disability; (2) failed to engage in the ADA's interactive process; (3) failed to provide a reasonable accommodation for her disability; and (4) interfered with her rights under the FMLA. Lakeview responded by filing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing that Adams did not exhaust her failure to engage in the

interactive process claim and failure to accommodate claim in her EEOC charge. The Court granted Lakeview's motion. (Rec. Doc. 13).

In response, Adams filed a motion for reconsideration and attached her EEOC questionnaire that was allegedly unavailable to Adams prior to this Court's Order. (Rec. Doc. 14). In light of the allegations in the questionnaire, the Court granted Adams motion for reconsideration but also expressly granted Lakeview leave to refile its motion to dismiss in order to address whether the questionnaire satisfied the ADA's exhaustion requirement. (Rec. Doc. 20). Lakeview subsequently refiled its motion to dismiss which the Court granted. (Rec. Doc. 26). The only remaining claims are Adams' claims that Lakeview discriminated against her due to her disability and interfered with her rights under the ADA. Now, before the Court is Lakeview's motion for summary judgment seeking dismissal of Adams's remaining claims.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but

a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

4

**DISCUSSION**

First, Lakeview argues that Adams was terminated from her employment for a non-discriminatory and lawful reason after she violated Lakeview's' Substance Use in the Workplace Policy. (Rec. Doc. 61-1, at 1). Second, Lakeview contends that it did not interfere with Adams's FMLA. In fact, the opposite is true because Adams was certified for and liberally used her FMLA from her initial date of certification through her date of termination. (*Id.* at 2). In opposition, Adams argues that Lakeview (1) improperly terminated her employment because of her disability (discriminatory discharge) and (2) interfered with her FMLA (FMLA interference). *See generally* (Rec. Doc. 81).[1]

## I.   ADA DISCRIMINATORY DISCHARGE

An ADA discriminatory discharge charge claim "will not give rise to any relief where the employer has terminated the employee for valid reasons unrelated to any

---

[1] In her opposition, Adams raises an FMLA retaliation claim. This is her first time raising this claim, and it was never pled. It is well-settled law in the Fifth Circuit that "a plaintiff may not rely on new claims raised for the first time in an opposition to a motion for summary judgment." *Jackson v. Hiller Companies, Inc.*, No. 19-12175, 2021 WL 5113162, at *5 (E.D. La. Nov. 3, 2021); *see also Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court."); *Amedee v. Shell Chem. LP-Geismer Plant*, 384 F. Supp. 3d 613 (M.D. La. 2019), *aff'd sub nom.*, *Amedee v. Shell Chem., L.P.*, 953 F.3d 831 (5th Cir. 2020) (denying consideration of any facts, offered exhibits, or arguments pertaining to plaintiff's newly-raised claim because she failed to plead such a claim in the complaint); *De Franceschi v. BAC Home Loans Servicing*, 477 F. App'x 200, 204 (5th Cir. 2012) ("A properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698–99, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).
Thus, the Court will disregard the FMLA retaliation claim. Even if the Court were to consider this new claim, it would fail as well. While FMLA retaliation and ADA discrimination "claims vary in their prima facie elements, [neither] will give rise to any relief where the employer has terminated the employee for valid reasons unrelated to any alleged discriminatory or unlawful motive." *Miller v. Metrocare Servs.*, 809 F.3d 827, 832 (5th Cir. 2016). As discussed more fully below, the Court finds that Lakeview terminated Adams for valid reasons unrelated to any alleged discriminatory or unlawful motive.

alleged discriminatory or unlawful motive." *Miller v. Metrocare Servs.*, 809 F.3d 827, 832 (5th Cir. 2016) (citations omitted). Assuming, *arguendo*, that Adams made a prime facie case of her ADA claim, Lakeview proffered a legitimate, nonretaliatory reason for terminating Adams.

Lakeview argues that it terminated Adams based upon her "conduct/behavior at work on July 25, 2019, in violation of Lakeview's Substance Use in the Workplace Policy, after being on two final warnings." (Rec. Doc. 61-1, at 22). In opposition, Adams contends that she did not violate the Substance Use Policy, and, in support of this contention, she cites to Lakeview's 30(b)(6) deposition in which Lakeview's representative testified that Adams did not do any of the prohibited behaviors in the substance use policy. (Rec. Doc. 81, at 10); (Rec. Doc. 81-6, at 4). However, Lakeview's representative testified that Adams did violate the policy, despite not doing any of the enumerated prohibited behaviors, because the policy "imposes an affirmative responsibility to the employee to notify their supervisor when they're taking prescribed over-the-counter drugs that the employee . . . has been advised or based upon the drug profile may impair their job performance." (*Id.*). Lakeview stated that "Ms. Adams had a responsibility to notify her supervisor when she was taking prescribed or over-the-counter drugs that may impair her job performance." (*Id.*). Moreover, Lakeview cites to Adams' termination documentation which states:

> On July 25, 2019, you were asked to work in the Blood Bank. You refused to perform those duties. You later attempted to excuse your refusal to perform Blood Bank duties because you were taking "a lot of Benadryl" and you admitted that you believed yourself to be too impaired to perform the essential functions of your job.

6

> The standard of our organization is to deliver safe, effective, efficient, compassionate and satisfying care and services. Accordingly, our policies prohibit employees from being impaired at the workplace. Your statements clearly indicated that you believed yourself so impaired at the time in question that you could not perform your job, and that you presented yourself to the workplace with full knowledge of your condition. According to the organizations' Substance Abuse Policy HR.ER.060., employees must notify their supervisor whenever he or she is taking a prescribed or over-the-counter drug that the employee has been advised, or based upon the drug profile, may impair job performance (*e.g.*, drowsiness or diminished ability to focus.) Further, it is the expectation of all Lab employees to perform duties as requested. Your statement that you were on over-the-counter medication does not excuse you from responsibility for performing your job, as you failed to provide appropriate notice to a supervisor in advance.

(Rec. Doc. 61-13). Additionally, Adams argues that Lakeview told the EEOC that it did not fire Adams for violating its Substance Use Policy, and, in support of this argument, Adams cites to Lakeview's Position Statement to the EEOC. (Rec. Doc. 81, at 22); (Rec. Doc. 81-12).

"Terminating an employee whose performance is unsatisfactory according to management's business judgment is legitimate and nondiscriminatory as a matter of law." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 701–02 (5th Cir. 2014) (citing *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372–73 (5th Cir. 1997) (per curiam); *Smith v. Rockwell Int'l Corp.*, 77 F.3d 473, 473 (5th Cir. 1995) (per curiam) (unpublished)). In response, the plaintiff must "do more than simply negate the employer's proffered reasons: The plaintiff retains the burden of production with respect to the alleged impermissible discrimination." *Walton*, 119 F.3d at 371 (citations omitted). Here, Lakeview has proffered a legitimate, non-discriminatory reason for terminating Adams: her violation of the Substance Use Policy. Adams, in her own words, was

7

taking "a lot of Benadryl." Moreover, at her deposition, Adams testified that her working in Blood Bank after taking the Benadryl would be a "safety issue," (Rec. Doc. 61-30, at 97), and she did not "feel comfortable going into the Blood Bank at this time," (*id.* at 92). Moreover, in Lakeview's Position Statement to the EEOC, Lakeview stated that it terminated Adams "[w]ith the above disciplines in mind, on July 25, 2019, [Adams] refused to float in the blood bank department. Inasmuch as [Adams] was already on a final written warning by this time, the Hospital properly moved [Adams] to the next level of discipline – termination." (Rec. Doc. 81-12, at 2). Therefore, the Court finds that Defendant has put forth a legitimate, non-discriminatory reason for terminating Adams, and the burden of production shifts back to Adams to show that Defendant's proffered reason was pretextual.

> To prove that Defendant's proffered reason was pretextual, Adams must:
>
> offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citations and internal quotation marks omitted). To establish pretext, the plaintiff must prove her claim with substantial evidence demonstrating that discrimination lay at the heart of the employer's decision. *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). To do so, "[t]he plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)). "Evidence is substantial if it is of such quality

8

and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003). The plaintiff can establish pretext by (1) showing disparate treatment or by (2) showing that the employer's proffered explanation is false or unworthy of credence. *Wallace*, 271 F.3d at 220.

To show disparate treatment, the plaintiff may utilize comparators, which are employees similarly situated to the plaintiff. *Wallace v. Seton Fam. of Hosps.*, 777 F. App'x 83, 87–88 (5th Cir. 2019). For a comparator to be deemed similarly situated, the employees being compared should "h[o]ld the same job or responsibilities, share[] the same supervisor or ha[ve] their employment status determined by the same person and have essentially comparable violation histories." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (footnotes omitted). Moreover, "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.* (citation omitted). However, "nearly identical" should not be interpreted to mean "identical." *See id.* "Each employee's track record at the company need not comprise the identical number of identical infractions, albeit these records must be comparable." *Id.* at 261. "As the Supreme Court has instructed, the similitude of employee violations may turn on the 'comparable seriousness' of the offenses for which discipline was meted out[.]" *Id.* (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11 (1976)).

Here, Adams has identified numerous comparators: Medical Technologists A–I; Lab Assistant A; Phlebotomist A; Lab Quality Manager A; and Team Lead A–B.[2] Adams worked as a Laboratory Lead, which is a Section Supervisor position. Lakeview argues that Adams's proffered comparator employees are not proper comparators because they do not have the same job and/or responsibilities as Adams. (Rec. Doc. 61-1, at 25). In reply, Adams contends that all of the comparators are laboratory employees who are supervised by the same supervisor as Adams. However, she cites no evidence to support this contention and fails to offer any other evidence that the proffered comparators are proper. (Rec. Doc. 81, at 19). Even so, because Lakeview essentially concedes that the Team Leads' job responsibilities may be comparable to Adams's job responsibilities, (Rec. Doc. 61-1, at 28), the Court will assess the violation history of Team Lead A[3] compared to Adams.

Lakeview contends that Adams has a "complex disciplinary history, unlike any other lab employee . . . ." (Rec. Doc. 61-1, at 5). On or around October 22, 2018, Adams made an error while working in the Blood Bank, for which she was counseled. (*Id.* at 5); (Rec. Doc. 61-8). On November 7, 2018, Adams received a Final Written Warning for conduct/behavior after she made inappropriate hand gestures in a disrespectful manner to a co-worker. (Rec. Doc. 61-1, at 5–6); (Rec. Doc. 61-10). This final written warning stated, "[f]urther disciplinary action will result in termination." (Rec. Doc. 61-10, at 1). On November 16, 2018, Adams made a technical error in the Blood Bank

---

[2] Pursuant to the protective order filed in this case (Rec. Doc. 30), "personnel or employment records of a person who is not a party to the case" shall be kept confidential. Accordingly, each alleged comparator will be identified by his or her job description with a distinguishing letter of the alphabet.
[3] Adams does not address the violation history of Team Lead B so the Court will not either.

10

that presented "grave patient safety concern" for which Adams was issued a Final Written Warning for performance and patient safety. (Rec. Doc. 61-1, at 7); (Rec. Doc. 61-14). Ultimately, Lakeview argues that Adams was terminated for violating its Substance Use in the Workplace Policy. (Rec. Doc. 61-1, at 28).

Both parties agree that Team Lead A was counseled for Blood Bank errors. (*Id.*). Lakeview asserts that this employee made two Blood Bank errors over the course of two years. (*Id.*). However, unlike Adams's second Blood Bank error in November of 2018, Lakeview contends, neither of the Blood Bank errors that Team Lead A made were of "grave patient safety concern." (*Id.*). Lakeview cites to Team Lead A's HR Assessment Documentation in which neither recording of the two errors indicates "grave patient safety concern." (Rec. Doc. 61-32, at 1–6). In opposition, Adams argues that Team Lead A's first Blood Bank error was just as serious as the error Adams made but was not brought to the level of an HR Corrective Action. (Rec. Doc. 81, at 19). Adams also cites to the HR Assessment Documentation to support her contention. (Rec. Doc. 61-32, at 2). Notably, the first error made by Team Lead A is described as a *clerical* error three times in the HR Assessment Documentation. (*Id.*). The second error was a labeling error. (*Id.* at 3).

In addition to these two Blood Bank errors, Adams contends that Team Lead A made a third Blood Bank error that Adams caught herself. (Rec. Doc. 81, at 19). Adams cites to her deposition testimony in which she stated "I, also, know of a few errors that [Team Lead A] has made in Blood Bank; I was the tech who found one of those errors." (Rec. Doc. 81-2, at 5). Further, Adams cites to her declaration that Team

11

Lead A made an error in the Blood Bank where she labeled a unit of plasma to be transfused for the wrong patient. (Rec. Doc. 81-1, at 9) (citing (Rec. Doc. 81-2, at 5)). After a search of their records, Lakeview certified that it had no record of a third Blood Bank error made by Team Lead A. (Rec. Doc. 81-10).

The Court finds that Adams has not come forward with sufficient evidence to show that Team Lead A's Blood Bank errors were comparable to hers. Adams's second Blood Bank error was documented as a "grave patient safety concern" whereas Team Lead A's Blood Bank error was repeatedly referred to as clerical in nature. Moreover, Adams's termination came after her third performance and patient safety violation, when she refused to work in the Blood Bank because, due to her Benadryl intake, she did not feel able to perform high complexity work like that required in Blood Bank. Team Lead A had only two documented violations, neither of which presented "grave patient safety concern," and Adams has not produced evidence beyond her own unsubstantiated assertions and conclusions in response to Lakeview's litany of documentation in the alternative. Accordingly, Adams has not shown that she was subject to disparate treatment.

To survive this motion for summary judgment, Adams had to produce sufficient evidence from which a jury could conclude that the real reason for her termination was discrimination on account of her disability, not her violation of Lakeview's Substance Use Policy. Adams has failed to provide sufficient evidence, and therefore, Adams has failed to show that she was discharged because of her disability. Accordingly, her ADA discriminatory discharge claim should be dismissed.

## II.   FMLA INTERFERENCE

To establish a prima facie interference case, Adams must show that (1) she was an eligible employee, (2) Lakeview was an employer subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of her intention to take FMLA leave, and (5) Lakeview denied her the benefits to which she was entitled under the FMLA. *Lanier v. Univ. of Texas Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013). Here, the dispute arises under the fifth element: whether Lakeview denied Adams her FMLA benefits to which she was entitled. Specifically, Adams contends Lakeview interfered with her FMLA in four ways: (1) Adams's supervisor used her FMLA leave as part of the calculation of attendance points and disciplined Adams for taking FMLA leave; (2) attendance was a factor in Adams's termination; (3) Adams was forced to use 30 minute intervals for timekeeping of her FMLA instead of 15 minute intervals; and (4) Adams was required to use up her Paid Time Off ("PTO") when she used her FMLA leave. (Rec. Doc. 81, at 10–11). Lakeview responded to each of Adams's contentions in turn. (Rec. Doc. 88).

First, Adams argues that on her Performance Improvement Plan she was given a Discipline/ Corrective Action for attendance on November 1, 2018, even though she was approved for FMLA leave that day. (Rec. Doc. 81, at 10). In reply, Lakeview asserts that the verbal Corrective Action only refers to five attendance points, without reference to any dates, let alone November 1, 2018. (Rec. Doc. 88, at 2); (Rec. Doc. 81-5, at 59). In fact, Lakeview avers, Adams was given FMLA leave for that day. (*Id.* at 3); (Rec. Doc. 61-18, at 21). After a review of the evidence, the Court agrees with

13

Lakeview that the Performance Improvement Plan that Adams refers to does not include November 1, 2018, and Adams was granted FMLA leave for November 1, 2018.

Second, Adams argues that attendance was a factor in her termination. (Rec. Doc. 81, at 10). She makes this claim because (1) she was disciplined for attendance and (2) a single footnote in Lakeview's Position Paper to the EEOC. (*Id.*). This footnote states: "The Hospital tracks Attendance write-ups separately from performance/behavior write-ups. In addition to the various performance/ behavioral issues discussed above, [Adams] had received discipline for attendance issues and was on a written warning for attendance at the time of her termination." (Rec. Doc. 81-12, at 1). What Lakeview properly contends is that Adams ignored the clearly stated reason for her termination in the body of the Position Paper: performance and behavioral issues. (Rec. Doc. 88, at 3). The Court agrees with Lakeview that attendance was not a factor in her termination.

Third, Adams asserts that she was improperly forced to use thirty-minute intervals for timekeeping of her FMLA instead of fifteen-minute intervals. (Rec. Doc. 81, at 11). Adams has not cited to any evidence to support this assertion, whereas Lakeview has produced evidence that Adams used her FMLA intermittent leave in fifteen-minute intervals. (Rec. Doc. 61-1, at 35); (Rec. Doc. 61-18). Moreover, Lakeview asserts that Adams never exhausted her FMLA so she did not lose a benefit even if she could produce evidence that Lakeview forced her to use her FMLA

intermittent leave in thirty-minute intervals. (Rec. Doc. 88, at 4); (Rec. Doc. 61-15). Thus, the Court agrees with Lakeview.

Finally, Adams contends she was required to use her PTO and FMLA concurrently. (Rec. Doc. 81, at 11). Adams does not cite any authority that this is improper. (*Id.*). Instead, she asks the Court, "Defendant indicates that it can legally have such a policy. But why must it do so if it causes harm to the employees who are certified for FMLA leave?" (*Id.*). In contrast, Lakeview cites to ample evidence that this practice is not only legal, but uniformly applied across the hospital. *See* 29 C.F.R § 825.207(a); *see also* (Rec. Doc. 61-1, at 33); (Rec. Doc. 61-28); (Rec. Doc. 61-29); (Rec. Doc. 61-31, at 28–29). Notably, Lakeview running PTO and FMLA concurrently allowed Adams to be paid while on FMLA leave, which is not a legal requirement. (Rec. Doc. 61-1, at 33); (Rec. Doc. 88, at 5). Thus, the Court agrees with Lakeview.

Adams cites no record evidence or law to support her FMLA interference argument. Thus, she has failed to create a fact issue sufficient to defeat Lakeview's motion for summary judgment, and her FMLA interference claim must be dismissed.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Columbia/HCA of New Orleans, Inc. d/b/a Lakeview Regional Medical Center, A Campus of Tulane Medical Center's *Motion for Summary Judgment* **(Rec. Doc. 61)** is **GRANTED.**

**IT IS FURTHER ORDERED** that all of Plaintiff Virginia Adams's claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Lakeview's *Motion to Strike* **(Rec. Doc. 83)** is **DENIED as moot**.

New Orleans, Louisiana, this 3rd day of June, 2022.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE